Mr. Huston, you have reserved three minutes for rebuttal, so that gives you seven minutes to start. The floor is yours. You may proceed. Thank you, your honor. May it please the court, Michael Huston for Jesse Smith. There are many issues involved in this appeal. I'm going to focus on procedural unreasonableness. I'm going to also focus on the aggravating role enhancement. Obviously, if there's questions that the court wishes to ask me, I'll take those questions. We had this fatico hearing over two years ago, and in that fatico hearing, two days, we heard testimony from special agents, we heard testimony from a co-conspirator, Mr. Martinez, and in terms of the determinations, why I want to focus on the aggravating role enhancement is that when Judge Deary made his decision, as he described the organization, the so-called organization, he used the term loosey-goosey. I mean, I have great respect for Judge Deary. I've appeared before him many times. But I think it was more or less a statement about the quality of the evidence that was put before him at that hearing. That we had a three-point enhancement for the aggravating role. But essentially, what you saw was, there's this sort of bizarre bonanza in this project where people sell drugs, where people, yes, talk about law enforcement coming to the location, where they do share text, and they provide information. But this is not a situation where there's pooled resources, pooled money, any sort of decision making that Mr. Smith had over any of his co-conspirators. So, for instance, like Mr. Smith and Mr. Johnson, he had no, there's not a scintilla of evidence that he had dominion and control or recruited these people. And so- There was evidence that Mr. Smith had someone who cooked the drugs. There were two cooks. Someone who tested the drugs, people who coordinated the sales. Why wasn't that enough? I mean, it's loosey-goosey in the sense that it's not a rigid organization, but there were certainly people helping him in his effort. Well, what we have in terms of the cooks, you have, there's two of them, your honor. What we have is this. They're cooking drugs, but there's no evidence that he's the sole person who's supplying, getting the drugs from. What you have here is, these are cooks who work for anybody. There's nothing exceptional about this. Well, the judge was not specific about who he considered to be covered by the five or more supervised people, but that he adopted the PSR, is my understanding. Correct. And the PSR seeks an adjustment for role in the offense, either because it involved five or more participants, or whether it was otherwise extensive, and it describes a circumstance that went on for several years with a large amount of drugs that were being, that he was being charged with responsibility for. I was struck also by the fact that the calls recorded during this one ten day period, period of the, his conduct was over 400 of his were related to drug trafficking. And fewer than 20 were not legally permanent, pertinent. And there was, there were many people still who were involved in some way. And so the whole, it seemed to me that the judge was somewhat vague about the facts, but the PSR went through this kind of volume of activity and concern about the location, possible relationship of these murders, and found, as a matter of fact, that it was an extensive activity, that that warranted the enhancement. What is wrong about that analysis? The analysis, the judge can't rely on the PSR. That's true, but he still has to then state the basis of his decision in the record. So our argument is this, that despite what's in the PSR, and what he's describing is a loosey-goosey, disorganized situation, so yes, the PSR, as we, I think we understand, these are documents that are put together, generally with the case officer's involvement, where they set forth the evidence as they see fit to get enhancements and get the quality of decisions they want from the district judges. But then once we went through the process itself, challenging the facts that were in the PSR, the end result was this is a situation where he's not in control of these people. But in terms of still, even if he didn't have tight control, isn't it fair to say that he was running in some way an extensive network that sold drugs? Well, he was doing what many people, I think even Judge Deary commented on this, like so many of these young men who were involved in drug dealing year after year and year, there's nothing exceptional about it. So to say that it's extensive, so for instance, in the government's 28J letter, that we're talking about a fraud involving millions of dollars, where you have a structured organization, where you have a person on top, they're recruiting different people to get involved, that doesn't exist in our case. These are people just living in a neighborhood who deal drugs, and we're trying to cobble in a structure around them that doesn't exist. But what about all the phone calls that were coming to him, all involving drug dealing in the space of those ten days, those 400 calls? Well, your honor, there's no doubt there's volume of these days where they would come in, where people would get their checks in terms of welfare and what have you. And yes, there's this high volume. But when you really get down to the substance of the actual sales themselves, people are reaching out to him. But that doesn't show otherwise extensive in and of itself. You still have to have evidence of the actual sales. And so, yes, people are reaching out, we have to live with that fact, there's no doubt about it. But it doesn't show or cooperate that actually anywhere like 400 sales or the judge made the comment that this is a 24-7, 365 operation. That's just, you had Mr. Martinez who said, I don't work for Mr. Smith. I do sample his product, but he had nothing to add about that. And then you have two of his co-defendants who have level 16s, who were supposedly involved in this to the same extent, and you have this disparity. I see I'm running out of time, your honor. I have reserved three minutes for rebuttal. I appreciate addressing the court. Thank you. All right, thank you, Mr. Houston. We'll have here from Mr. Zapana. You may proceed. Judge Sullivan, and may it please the court. My name is Victor Zapana. I'm an assistant US attorney in the Eastern District of New York. And I represent the United States on this appeal, as I did during the Fatico proceedings below. I'll take the balance of my time to focus on the aggravating role in Hansen, which is the subject of questioning today. I think what's helpful to first clarify the procedural posture on this argument, because I think that will reflect how I want to treat the various issues that Mr. Houston has mentioned today. There is the substantive question of whether there are facts in the evidence that support a management enhancement that, you know, you can look at, you can glean through an entire record, see, you know, that's a substantive issue. That is fairly preserved. The issue of whether there are findings made in the record by the judge as to the application of the enhancement, that is a separate question, a procedural one, where the relevant factors are the PSR, what he says on the record. And you can be bolstered by the record evidence, which here includes two days of testimony, about 100 pages of cooperative testimony, and so forth. And the third issue, which we submit has been abandoned, not preserved, is the open court, open court requirement, or you have to say it at the sentencing itself. That is subject to plain error, and it's been abandoned. And for the reasons why the record evidence clearly supports enhancement here, we urge this court to affirm in part and dismiss in part. Let me ask about the procedural question, because the judge's findings and the statement of reasons were remarkably brief and inspecific in contrast to other cases where he did not identify the five people who he was purportedly supervising, he didn't make an otherwise extensive finding. And I pointed out in the PSR where there was reference to otherwise extensive that would meet the guidelines in particular. But ordinarily, we demand for the district court to make specific findings. He did have this two day Fatico hearing, but there are no specific findings here that I can see would support the application. So what, am I missing something? And your honor, on this procedural point, I would like to direct the court to A415, where Judge Deary did make findings on the record where Mr. Smith- I'm looking at A415 right now. I mean, this is the sort of loosey-goosey situation, he says. There's no doubt he had an ongoing drug business, no question about it. He had relationships of one sort or another. Either people were sending him customers of customers, people who from time to time assisted him in one way or another, like cooking crap. There's no question he had a business going, but I think four levels is an overstatement. He never identifies the people, the four, the five people or five or more participants who he was supervising, does he? And your honor, I recognize he does not specifically name people in open court. I think once we consider the PSR and the record as a whole, that analysis changes. But I want to make sure the loosey-goosey comment is put into context. The government sought the four point leadership enhancement, the more significant enhancement. And in response to that, that's what, well, it's more loosey-goosey. He was making a comment about control, and the management enhancement requires only some control. The leadership enhancement requires a sort of four-factor analysis that's reflected in the guidelines. That's a more extensive analysis, and that's sort of the loosey-goosey comment that he was referring to. As to the explanation of the structure of the scheme, he mentions the cooking. He mentions assistance. He mentions that there is a business. In the PSR, there were three co-defendants identified as part of this scheme. He, in fact, pleaded guilty to a conspiracy. He, in addition, the cooker was another separate individual by Ms. Chisholm. There's plenty of testimony about that in the record. So even with that, Mr. Smith, the three co-defendants, and Ms. Chisholm, that's five. But we generally require the district court to make, be explicit about its findings supporting such a significant enhancement, don't we? And your honor- We regularly set back and for specific findings to be stated. And your honor, I think what's important here is to disentangle the open court requirement and the findings requirement. We do submit that the findings requirement, which is used to aid appellate review, can be met by adoption of the PSR. The case law is clear on this. In conjunction with the statements he made on the record, he did identify, though not naming her, he did identify the cooker. He did identify Mr. Smith, and the three other defendants that were listed in the PSR make five. In any event, under Rainford, the record can reflect fairly on this exact same argument, that there weren't explicit findings, a record support for an extensive scheme. As your honor made clear, there were enormous number of pertinent calls during that ten day period, which, as Mr. Martinez, a cooperate, explained, were slow days. This is a five year scheme, where there was a daily 24-7 operation, starting in the early morning hours, all the way to the end. The amounts of drugs here were, as Judge Geary mentioned, in the stratosphere. So we do think this is an extensive scheme under Rainford, even if your honor is not convinced that there are enough explicit findings as to the five or more participants. For those reasons, and for the reasons stated in the government's brief, we ask that you affirm in part, dismiss in part, or alternatively affirm in full. All right, thank you. Mr. Houston, you've got three minutes for rebuttal. Thank you, your honor. I just want to point out, what I feel is a concession in the government's brief at page 33. Basically, they state that some latitude must be given, but latitude is not sort of forbearance of an obligation to make findings below. And Judge Geary, again, with all due respect, and I've been- What about the argument that there are more than five individuals identified in the PSR? He's, the judge still- And the district court, of course, can adopt the factual recitations. Your honor, he can do that, but he still has to make a specific, he still has to make a finding about that and set that out. And I think- Why isn't that the finding? It's in the PSR. I adopt the facts set forth in the PSR. Because, well- It's a finding incorporated by reference. Well, I would say I have two responses. The first one is this, that it stands in contradiction to his statement in open court. So there's a tension there, and we can't ignore it. You have a loose- It stands in contradiction to the judge's statement? Well, to say it's loosey-goosey on the one hand, and then say the PSR- I mean, I think Mr. Zappelli is correct. The loosey-goosey statement is about why this is not a four-level leader or organizer enhancement, which does require more, including things like share of the proceeds, etc., ownership of the drugs. And so there was very little evidence of that. But why is that required for the three-level enhancement? Well, I think the loosey-goosey statement goes to the quality of the evidence about the enhancement in totality, your honor. I don't, with due respect, I don't read it the way you read it, only being cabined to the four-level enhancement. I think it also goes to the three-level enhancement, your honor. Your honor, I- The procedure follows immediately after his saying why he thought a three-level adjustment was appropriate, not a four-level. Well, let me go to the second part that I was going to address with Judge Chen's question. When it comes to the otherwise extensive part of the Judge Deary's analysis, what we have here is really a loose set of actors who live in a community who are not acting in concert. You have Mr. Martinez, who's the only person who provides insight to what is actually happening during the course of the conspiracy. And he says he's not a member of the conspiracy, and he's a customer, and that he buys from Mr. Smith and then does his own sales on his own. And so Judge Deary was faced with this lack of quality of evidence, and I think that's- But the PSR says Smith is the supervisor involving himself and at least four others, Spellman, Johnson, Warlock, and an unindicted individual who shot at rivals. Why isn't that sufficient? It's not sufficient because it stands, with all due respect, your honor, because it stands in contrast to the evidence that occurred at the hearing. I know that there's a tension there, but I think the difficulty is with PSRs, it's sort of like when we have a situation where it's, you can turn to the PSR, but this is a document that's created by probation with the assistance of special agents, by and large, your honor, with very little input from defense lawyers. The way we challenge it is through these hearings, and there is a contradiction there. But to say that, well, I rely on those findings when they're in controversy, when they're contradicted by the evidence at a fatical hearing, I think that requires that we have to look at what actually happened at the fatical hearing. It's more important than the PSR. Thank you. Thank you, Mr. Houston, Mr. Zaccano. We will reserve decision.